Colin M. TRACHT, petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C9–98–1473.

Court of Appeals of Minnesota.

April 20, 1999.

Charles A. Ramsay, Ramsay Law Firm, Ltd., Roseville, MN (for appellant)

Mike Hatch, Attorney General, Steven H. Alpert, Assistant Attorney General, St. Paul, MN (for respondent)

Considered and decided by DAVIES, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

PETERSON, Judge.

This appeal is from a district court order sustaining the revocation of appellant Colin Tracht's driver's license under the implied consent statute. Tracht argues that the revocation should be rescinded because police officers' entry into the garage and home where he was staying violated the Fourth Amendment's prohibition against unreasonable searches and seizures. We affirm.

## FACTS

Police officers Duane Stern and Larry Klink received a report of a motor vehicle accident involving property damage and possible personal injury and went to the accident scene. The witness who had reported the accident told Klink that he had seen a white pickup truck and a red pickup truck in the area. Klink began checking the area for the vehicle involved in the accident. He found a pickup truck in a residential driveway about two blocks from the accident scene. The truck was leaking radiator fluid, the driver's side window was broken, and the airbag had exploded. The officers learned that Tracht was the registered owner of the truck, apparently by running a check on a license plate found at the accident scene.

The driveway where Tracht's truck was parked led to a house with an attached garage. The large, overhead garage door was open. Klink and Stern entered the garage through the large doorway, walked about 10 to 15 feet to a service door between the house and garage, and knocked on the service door. Joseph Lane, a guest at the residence, answered the door. The officers said they wanted to speak with Tracht and asked whether he was in the house. Lane said that Tracht was inside, and the officers followed Lane into the house.

There is disputed testimony regarding whether Lane consented to the officers' entry into the house. The officers testified that as Lane entered the house, he held the door open in a manner that indicated he was consenting to the officers' entry. Lane denied doing anything to lead the officers to believe they had permission to enter the house.

The facts regarding what happened after Lane and the officers entered the house are not in dispute. The officers waited in the

dining room, which was about three feet beyond the door. Lane went into another room and told Tracht that police were at the house and wanted to talk to him. Tracht walked into the dining room, and, immediately afterwards, he and the officers walked outside to his truck. During a discussion with Tracht, the officers obtained evidence that ultimately led to his arrest for DWI.

## ISSUES

I. Did the officers' entry into the garage violate the Fourth Amendment's prohibition against unreasonable searches and seizures?

II. Assuming that the officers' entry into the house was unconstitutional, was the discovery of evidence that led to Tracht's arrest a result of the constitutional violation, or would the evidence have been inevitably discovered?

## ANALYSIS

### I.

■ When the facts are undisputed and the district court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether evidence need be suppressed. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992).

■ A defendant challenging the constitutionality of a search must show that he has an adversarial interest in the outcome of the case and that he had a legitimate expectation of privacy in the place that was searched. *State v. Carter*, 569 N.W.2d 169, 173–74 (Minn.1997), *rev'd on other grounds sub nom.*, *Minnesota v. Carter*, — U.S. —, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). The state does not dispute that Tracht meets this test.

■ The Fourth Amendment protects the home and its curtilage from unreasonable searches and seizures. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984). A home's curtilage includes the garage. *State v. Crea*, 305 Minn. 342, 346, 233 N.W.2d 736, 739 (1975). [P]olice with legitimate business may enter the areas of the curtilage which are impli-

edly open to use by the public. Thus, police may walk on the sidewalk and onto the porch of a house and knock on the door if they are conducting an investigation and want to question the owner, and in such a situation the police are free to keep their eyes open and use their other senses.

*Id.* "What a person knowingly exposes to the public, even in his own home * * *, is not subject to Fourth Amendment protection." *Carter*, 569 N.W.2d at 177 (quoting *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967)).

■ The facts regarding the officers' entry into the garage are undisputed. Klink and Stern entered the garage through the large doorway, walked about 10 to 15 feet to a service door between the house and garage, and knocked on the service door. The garage was attached to the house, and the large garage door was open, exposing the service door to the public. The officers entered the garage for the purpose of knocking on the service door and were not looking for evidence in the garage. Under these circumstances, we conclude that there is no basis for distinguishing the officers' entry into the garage from entering a porch to knock on a door to a house. The officers did not violate the Fourth Amendment by entering the garage and knocking on the service door.

### II.

■ The parties dispute whether Lane consented to the officer's entry from the garage into the house. *See State v. Thompson*, 578 N.W.2d 734, 740 (Minn.1998) (consent to entry is well-recognized exception to warrant requirement). There was conflicting testimony regarding Lane's conduct when the officers entered the house, and the district court did not resolve the issue. Resolution of the conflict, however, is unnecessary because the officers would have inevitably discovered the evidence resulting in Tracht's arrest for DWI and the revocation of his driver's license even if they had remained in the garage while Lane went to get Tracht.

■ Generally, the exclusionary rule prohibits the admission of evidence discovered during an illegal search. *State v. Mar-*

*tinez,* 579 N.W.2d 144, 148 (Minn.App.1998), *review denied* (Minn. Jul. 16, 1998); *see Olson v. Commissioner of Pub. Safety,* 371 N.W.2d 552, 555–56 (Minn.1985) (affirming order rescinding revocation of driver's license when evidence of the driver's intoxication was obtained as the result of a Fourth Amendment violation); *Ascher v. Commissioner of Pub. Safety,* 527 N.W.2d 122, 125 (Minn.App.1995) (in an implied consent proceeding, the exclusionary rule applies to evidence obtained from an unconstitutional checkpoint), *review denied* (Minn. Mar. 21, 1995). The inevitable discovery doctrine, however, allows the admission of evidence if the police would have inevitably discovered the evidence even if they had not conducted the illegal search. *Martinez,* 579 N.W.2d at 148. Respondent Commissioner of Public Safety has the burden of proving that the inevitable discovery exception applies. *State v. Bauman,* 586 N.W.2d 416, 423 (Minn.App. 1998), *review denied* (Minn. Jan. 27, 1999).

During the implied consent hearing, the district court stated:

> [Lane] did just as the officers asked him: he went and got [Tracht], he was obviously leaving the house to meet with the officers, the officers just happened to be inside.
> * * *
>  * * * *
> * * * [T]his officer apparently asked Mr. Lane to have Mr. Tracht come outside and meet him or "can you get [Tracht]", whatever he said to him. And so he goes to the bathroom where he is and says "the police are here and they'd like to talk to you", something of that nature. So he walks past him and is heading toward the back door.
> Now, of what significance is it that the officer is in the kitchen or still outside the back door? What difference does it make?

From these comments, we can infer a finding that, if the officers had waited in the garage while Lane went to get Tracht, Tracht would have gone into the garage to talk to the officers, and the officers would have discovered the evidence resulting in his arrest for DWI and the revocation of his driver's license. Evidence that Tracht volun-

tarily walked into the dining room to talk to the officers supports that finding.

## DECISION

The police officers did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures by entering the garage and knocking on the service door between the garage and the house. Even if the officers violated the Fourth Amendment in entering the house, they would have inevitably discovered the evidence resulting in Tracht's arrest for DWI and the revocation of his driver's license. The district court did not err in sustaining the revocation of Tracht's driver's license.

**Affirmed.**