17 P.3d 668 (2001)
104 Wash.App. 703
STATE of Washington, Respondent,
v.
Wilma L. DYRESON and Danny Lee Austin, Appellants.
Nos. 19072-2-III, 19073-1-III.
Court of Appeals of Washington, Division 3, Panel One.
February 6, 2001.
*670 David N. Gasch, Spokane, for Appellants.
Kevin M. Korsmo, Andrew J. Metts, III, Deputy Pros. Attys., Spokane, for Respondent.
*669 BROWN, A.C.J.
After a stipulated facts trial, Wilma Dyreson and Danny Lee Austin were found guilty of possessing marijuana seen by a detective after a warrantless entry into the appellants' garage. We decide the trial court erred by denying suppression of the marijuana seized under a subsequent warrant because the detective's affidavit was based upon an observation from an unlawful vantage point. Accordingly, we reverse.

FACTS
The facts are mainly drawn from the unchallenged CrR 3.6 findings. Spokane County Sheriff's Detective Steven Barbieri went to the residence of appellants Wilma Dyreson, and Danny Austin to contact them regarding an unrelated police matter. Detective Barbieri was unable to contact appellants at the house. A renter at the property told the detective to look in the shed/garage to see if appellants were there.
As Detective Barbieri approached the garage, he heard loud music. Although Detective Barbieri knocked on the open garage door and identified himself, he heard no response. Detective Barbieri believed it might be difficult for someone inside the garage to hear him, so he entered the building through the open door.
Detective Barbieri went about half way into the garage. He was unable to find appellants, but he saw marijuana in a tray near the back of the garage. He could not see the tray from the threshold of the building. Detective Barbieri left the property and returned several days later with a search warrant and seized the marijuana.
The State charged appellants with one count of possessing marijuana. Appellants unsuccessfully moved to suppress the marijuana. *671 After the court entered consistent findings of fact and conclusions of law, appellants were convicted following a stipulated facts trial. We consolidated Ms. Dyreson and Mr. Austin's separate appeals.

ISSUE
Did the trial court err by denying suppression of the marijuana and concluding Detective Barbieri's warrantless entry into the appellants' open garage to a point where the marijuana could be seen was proper under open view principles considering the renter's direction to look for the appellants there?

ANALYSIS
Appellants do not challenge the CrR 3.6 findings. Unchallenged findings are binding on appeal and thus not subject to independent review. State v. Hill, 123 Wash.2d 641, 644-45, 870 P.2d 313 (1994). This court reviews the trial court's conclusions of law pertaining to suppression of evidence de novo. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
Appellants argue violations of both the Fourth Amendment and article I, section 7 of our state constitution. The State contends the marijuana was observed in "open view" from an area of the curtilage impliedly open to the public. Significantly, the State disavows any contention that Detective Barbieri acted with apparent authority derived from the renter when entering the garage. Brief of Respondent at 8. While the court did not enter findings or conclusions regarding the renter, it mentioned the reasonableness of following the renter's instructions.
It is well settled that article I, section 7 provides broader protection against unreasonable search and seizure than the Fourth Amendment. See State v. Ladson, 138 Wash.2d 343, 347-48, 979 P.2d 833 (1999). When an analysis under article I, section 7 is appropriate, a Fourth Amendment analysis need not be addressed. State v. Gave, 77 Wash.App. 333, 337, 890 P.2d 1088 (1995). It is appropriate to begin our analysis under the state constitution. State v. Thorson, 98 Wash.App. 528, 531, 990 P.2d 446 (1999), review denied, 140 Wash.2d 1027, 10 P.3d 407 (2000). Recently, the Supreme Court blended state and federal search and seizure analyses in concluding that a premise search violated both constitutions. See State v. Ross, 141 Wash.2d 304, 312-14, 4 P.3d 130 (2000). We employ a combination of the Ross and Thorson analyses in our review here.
Here, the initial entry was warrantless. "It is well-established that if information contained in an affidavit of probable cause for a search warrant was obtained by an unconstitutional search, that information may not be used to support the warrant." Ross, 141 Wash.2d at 311-12, 4 P.3d 130 (citing State v. Johnson, 75 Wash.App. 692, 709, 879 P.2d 984 (1994)). The affidavit supporting the search warrant relies on Deputy Barbieri's observation from inside the garage. Consequently, this appeal turns on whether the deputy's entry into the building was constitutional.
"We begin with the well-recognized principle that warrantless searches are per se unreasonable under both the Fourth Amendment and article I, section 7 of our state constitution unless they fall within a few specifically established and well-delineated exceptions." Ross, 141 Wash.2d at 312, 4 P.3d 130 (citing State v. Myers, 117 Wash.2d 332, 337, 815 P.2d 761 (1991)). The burden is on the State to prove one of these exceptions applies. Ladson, 138 Wash.2d at 349-50, 979 P.2d 833.
Here, the State relies on the "open view" exception to the warrant requirement, which applies when an officer observes contraband from a "nonconstitutionally protected area." State v. Kennedy, 107 Wash.2d 1, 10, 726 P.2d 445 (1986) (citing State v. Seagull, 95 Wash.2d 898, 901-02, 632 P.2d 44 (1981)). "Under the `open view' doctrine, detection by an officer who is lawfully present at the vantage point and able to detect something by utilization of one or more of his senses does not constitute a search within the meaning of the Fourth Amendment." Ross, 141 Wash.2d at 313, 4 P.3d 130 (citing Seagull, 95 Wash.2d at 901, 632 P.2d 44; State v. Young, 123 Wash.2d 173, 182, 867 P.2d 593 (1994)). An "open *672 view" observation is not a search at all but may provide probable cause for a constitutionally executed search. See State v. Bobic, 140 Wash.2d 250, 254, 255, 258-59, 996 P.2d 610 (2000).
Here, Detective Barbieri's vantage point was inside the garage and curtilage, where constitutional protections normally extend. Thus, the threshold federal constitutional question is whether Detective Barbieri "intruded upon a privacy expectation deserving of Fourth Amendment protection." Seagull, 95 Wash.2d at 902, 632 P.2d 44 (citing Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). By contrast, the "ultimate question" under our state constitution is whether the detective "violated a privacy interest which citizens of this state have traditionally and justifiably held safe from governmental trespass absent a warrant" when he entered the garage. Thorson, 98 Wash.App. at 533, 990 P.2d 446.
The Thorson court, citing State v. Myrick, 102 Wash.2d 506, 688 P.2d 151 (1984), aptly noted that resolution of the state constitutional claim required the reviewing court "to look to the nature of the property, the expectation of privacy it reasonably supports, and the nature of the intrusion." Thorson, 98 Wash.App. at 533, 990 P.2d 446. An examination of these factors necessarily requires some deference to "traditional Fourth Amendment concepts." Thorson, 98 Wash. App. at 532-33, 990 P.2d 446 (footnote omitted).
Constitutional protection against warrantless searches applies most strongly to a person's home. Ross, 141 Wash.2d at 312, 4 P.3d 130. The Fourth Amendment's "umbrella" of protection extends to a home's curtilage. Id. (quoting State v. Ridgway, 57 Wash.App. 915, 918, 790 P.2d 1263 (1990)). Both parties agree the shed/garage lies within the curtilage of appellants' residence.
"An officer with legitimate business, when acting in the same manner as a reasonably respectful citizen, is permitted to enter the curtilage areas of a private residence which are impliedly open, such as access routes to the house." Ross, 141 Wash.2d at 312, 4 P.3d 130 (citing Seagull, 95 Wash.2d at 902, 632 P.2d 44; State v. Rose, 128 Wash.2d 388, 392, 909 P.2d 280 (1996)). "However, a substantial and unreasonable departure from such an area, or a particularly intrusive method of viewing, will exceed the scope of the implied invitation and intrude upon a constitutionally protected expectation of privacy." Seagull, 95 Wash.2d at 903, 632 P.2d 44. All parties agree the detective was initially engaged in legitimate police business.
Given the above, two questions arise. First, was the interior of the garage an area of the curtilage impliedly open to the public? Second, if the answer is no, did Detective Barbieri substantially and unreasonably depart from the impliedly open areas of the curtilage or engage in a particularly intrusive method of viewing so as to impermissibly intrude into appellants' reasonable expectations of privacy when he crossed the threshold of the garage? We turn now to our analysis of the first question.
Generally, areas of the curtilage impliedly open to the public include the driveway, walkway, or access route leading to the residence. State v. Hoke, 72 Wash.App. 869, 866 P.2d 670 (1994). But if a portion of the driveway is hidden from public view and does not lead directly to the house, it may fall outside the impliedly open areas of the curtilage. See State v. Daugherty, 94 Wash.2d 263, 268-69, 616 P.2d 649 (1980) (resident had reasonable expectation of privacy in particular area of driveway depriving officer of lawful right to view interior of garage from threshold). The guiding principle is that a police officer on legitimate business may go where any "reasonably respectful citizen" may go. Seagull, 95 Wash.2d at 902, 632 P.2d 44.
No case in Washington exists holding that the exposed interior of a residential garage is impliedly open to the public. In Minnesota a police officer may enter an open garage without a warrant to knock on a door connecting the garage to an attached house. Tracht v. Comm'r of Pub. Safety, 592 N.W.2d 863, 865 (Minn.App.1999) (reasoning that the officer's entry was analogous to entry onto a porch under the Fourth Amendment). But, because no such door exists here, any analogy to Tracht is inapt.
*673 In sum, we conclude an open garage door does not impliedly open the curtilage to a reasonably respectful citizen. See Thorson, 98 Wash.App. at 536-37, 990 P.2d 446. In other words, no reasonably respectful citizen would feel free to enter the garage without the owner's consent. See id. at 535-36, 990 P.2d 446. Therefore, it follows that Detective Barbieri left the impliedly open area of the curtilage once he crossed the threshold of the garage. Given this conclusion we turn to the next question of whether Detective Barbieri's departure infringed upon a constitutionally protected expectation of privacy. Seagull, 95 Wash.2d at 903, 632 P.2d 44.
"What is reasonable cannot be determined by a fixed formula." Seagull, 95 Wash.2d at 903, 632 P.2d 44. "It must be based on the facts and circumstances of each case." Id. (citing Ker v. California, 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)). The Supreme Court recently disapproved of treating the Seagull "factors" as fixed and reinforced the notion that a reviewing court must consider "`the facts and circumstances of each case.'" Ross, 141 Wash.2d at 309 n. 1, 4 P.3d 130 (quoting Seagull, 95 Wash.2d at 903, 632 P.2d 44). Thus, the Seagull "factors" are merely illustrative. Here, we have already reasoned the officer did not properly keep his distance and exceeded the scope of any implied invitation, a factor similar to those considered in Seagull.
Additionally, the officer's initial purpose of going to the garage was to locate Ms. Dyreson and Mr. Austin. This purpose could be accomplished by merely looking into the open garage to see if they were present. Thus, Detective Barbieri's intrusion was exploratory beyond that minimally necessary to accomplish his stated purpose. In other words, Detective Barbieri intruded into a place where appellants had a reasonable expectation of privacy. Generally, the possessors of fully enclosed structures have a reasonable expectation of privacy in the contents of those structures. See, e.g., United States v. Wright, 991 F.2d 1182, 1186 (4th Cir.1993) (barn located outside curtilage).
Regarding garages, an appellate court in Illinois held that once a person opens the overhead door of his garage and exposes its interior to public view, he abandons any legitimate expectation of privacy in the garage, its contents, and his activities therein. People v. Hobson, 169 Ill.App.3d 485, 525 N.E.2d 895, 898, 121 Ill.Dec. 588 (1988). But Hobson does not stand for the proposition that one may go beyond a lawful vantage point to search inside a garage. Illustrative is a North Dakota case where the court reasoned that the owner of an open garage lost his reasonable expectation of privacy regarding the contents and activities observable from an area where the officer had a right to be. Lubenow v. North Dakota State Highway Comm'r, 438 N.W.2d 528, 532 (N.D. 1989). The Lubenow court further determined that the garage owner retained a reasonable expectation of privacy with regard to a physical intrusion into the garage. Id. Similar reasoning is found in State v. Blumler, 458 N.W.2d 300, 302 (N.D.1990) and State v. Winkler, 552 N.W.2d 347, 352 (N.D. 1996).
These North Dakota authorities are persuasive and consistent with the notion that the "`Fourth Amendment operates on a downward ratcheting mechanism of diminishing expectations of privacy.'" State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999) (quoting State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984)), and the broader privacy protection provided under article I, section 7, see Myrick, 102 Wash.2d at 513, 688 P.2d 151. By leaving their garage door open, appellants merely lost their expectation of privacy in those objects and activities observable by a visitor who may be lawfully standing at the threshold. Lubenow, 438 N.W.2d at 532. Here, Detective Barbieri could not see the marijuana from the open doorway; thus his later observation could not support a warrant. If the detective had merely peered into the open garage from a lawful vantage point and seen contraband, then the State's argument would then be apt. See, e.g., Wright, 991 F.2d at 1186 (officer observed evidence through open door of barn loft).
The State next argues that Detective Barbieri reasonably relied on the instructions of the "renter" in entering the garage to contact the appellants. The State's contention is unpersuasive; the unchallenged finding *674 of the trial court is that the renter told the detective "to go look in the shed." But looking into a building is not the same as crossing its threshold. See State v. Vonhof, 51 Wash.App. 33, 40, 751 P.2d 1221 (1988); see also Daughenbaugh v. City of Tiffin, 150 F.3d 594, 602 (6th Cir.1998) (noting that visual inspection from lawful vantage point "quite different" from "physical assault" on protected area). Moreover, merely looking for the owner of the garage is not an accepted circumstance justifying a warrantless entry.
The State next argues loud music made it reasonable for the detective to enter the building to contact the appellants. But one does not reasonably enter a residence merely because nobody answers the doorbell or a knock no matter whether loud music is playing or not. Here, crossing the garage threshold after knocking and calling out is no different. Thus, this argument is also unpersuasive.
We conclude that the open view exception does not apply because Detective Barbieri's vantage point intruded on the appellants' reasonable expectation of privacy. State v. Seagull, 95 Wash.2d 898, 902-03, 632 P.2d 44 (1981). Correspondingly, the "plain view" doctrine does not apply because the State cannot show Detective Barbieri had a legally justifiable reason for being inside the garage in the first place. Id. at 901-02, 632 P.2d 44.
In sum, the State does not show any exception to the general rule requiring a warrant applies here. See State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996). Detective Barbieri entered the garage without a warrant or other legally recognized cause. His entry intruded on the appellants' private affairs and their reasonable expectation of privacy. Consequently, the entry was unconstitutional under both the Fourth Amendment and article I, section 7. Therefore, the marijuana should have been suppressed because the affidavit for the warrant relied entirely on Detective Barbieri's impermissible observation. State v. Ross, 141 Wash.2d 304, 314-15, 4 P.3d 130 (2000). Absent the marijuana, insufficient evidence exists to support the possession charge. State v. Kinzy, 141 Wash.2d 373, 396, 5 P.3d 668 (2000), cert. denied, ___ U.S. ___, 121 S.Ct. 843, 148 L.Ed.2d 723 (2001).

CONCLUSION
The trial court erred when denying the defense motion to suppress the marijuana because it improperly concluded the warrantless entry into the appellants' garage was proper under open view principles. Detective Barbieri was not in a lawful vantage point when he observed the contraband.
Reversed.
SWEENEY, J., and KATO, J., concur.