[Cite as *State v. Mechling*, 2013-Ohio-3327.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 12-COA-040 |
| CHRISTOPHER J. MECHLING | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Ashland Municipal Court,
Case No. 12-CR-B-564AB

JUDGMENT:      Reversed and Remanded

DATE OF JUDGMENT ENTRY:      July 29, 2013

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

DAVID M. HUNTER      THOMAS L. MASON
Acting Assistant Law Director      Mason, Mason & Kearns
Ashland City Law Director's Office      Post Office Box 345
1213 East Main Street      153 West Main Street
Ashland, Ohio 44805      Ashland, Ohio 44805-0345

*Hoffman, P.J.*

{¶1} Defendant-appellant Christopher J. Mechling appeals the judgment entered by the Ashland Municipal Court denying his motion to suppress. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On May 19, 2012, Officer Donald Garrison responded to a loud music complaint in the area of Birch and 10th Street in the City of Ashland. As he approached the residence, he determined the noise was coming from a detached garage with a driveway leading up to it from the street. He could see a fire pit or an actual fire on the driveway at the corner of the house. He could hear a lot of loud noise, talking, and music coming from a party in the garage. The residential house faces 10th Street, while the garage for the residence is a detached two-car garage and sits directly behind the house and is off of Birch Street. The Officer testified, he "had to walk up to the front area off of 10th Street" where "you go off back through the side yard to get back to the garage."

{¶3} As Officer Garrison was walking up to the garage, he heard a loud female voice state, "Hey, why don't you get that fat joint out of your pocket, and let's smoke it." He heard a male voice say he didn't have a joint, and the female voice responded, "I seen you put that fat joint in your pocket. Why don't you get it out so we can smoke it?" Officer Garrison then walked around the corner and said, "Yeah, why don't you get it out." Officer Garrison asked Appellant what he had in his pockets, and Appellant said "nothing." The officer asked Appellant to show him, and Appellant pulled his pockets

halfway out, and the marijuana was visible in his hand. Officer Garrison asked Appellant if he had anything else, and Appellant produced rolling papers.

{¶4} Appellant was cited with possession of marijuana and drug paraphernalia under the Ashland City Code. Appellant filed a motion to suppress. Via Magistrate's Order of August 17, 2012, the motion to suppress was denied. The trial court overruled Appellant's objections to the Magistrate's Order via Judgment Entry of September 28, 2012. Appellant entered a plea of no contest to the charges, was convicted and sentenced accordingly.

{¶5} Appellant assigns as error:

{¶6} "I. THE TRIAL COURT ERRED BY RULING THAT LAW ENFORCEMENT AUTHORITIES COULD TRESPASS ON THE GRASS AREA OF A HOME WITHOUT A WARRANT IN ORDER TO APPROACH A GARAGE WHEN THEY COULD HAVE DONE SO BY WALKING FROM THE SIDEWALK AND UP THE DRIVEWAY TO THE GARAGE.

{¶7} "II. THE TRIAL COURT ERRED BY FINDING THAT A POLICE OFFICER MAY ORDER A SUSPECT TO EMPTY HIS POCKETS, WHICH CONSTITUTES AN ARREST, WITHOUT POSSESSING PROBABLE CAUSE TO EFFECT A WARRANTLESS ARREST."

I.

{¶8} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *See State v. Klein,* 73

Ohio App.3d 486 (1991), *State v. Guysinger,* 86 Ohio App.3d 592 (1993). Second, an appellant may argue the trial court failed to apply the correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See State v. Williams,* 86 Ohio App.3d 37 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law, an appellant may argue the trial court has incorrectly applied the law in deciding the ultimate or final issue raised in the motion to suppress. In reviewing this type of claim, an appellate court must give deference to the trial court and is governed by an abuse of discretion standard; i.e., it must determine whether the trial court's subjective determination of the ultimate issue in the case was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983). It is with this framework in mind that we address Appellant's assignment of error.

{¶9} The case law developed under the Fourth Amendment requires that a police officer's warrantless search of a residence must come within one of the recognized exceptions to the warrant requirement. *Payton v. New York* (1980), 455 U.S. 573, 576, 100 S.Ct. 1371, 1374-75. A search under the Fourth Amendment meaning occurs, however, only when a subjective expectation of privacy which society is prepared to consider reasonable is infringed. *United States v. Jacobsen* (1984), 466 U.S. 109, 113, 104 S.Ct. 1652, 1656. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States* (1967), 389 U.S. 347, 351, 88 S.Ct. 507, 511. See *State v. Mark* (Dec. 19, 1993) Fayette App. Nos. CA83-05-010 and -011. The determination of whether a

legitimate expectation of privacy exists is made on a case-by-case basis. *United States v. Brown* (C.A.6, 1980), 635 F.2d 1207, 1209.

**{¶10}** "Warrantless searches are 'per se unreasonable under the Fourth Amendment-subject only to a few specially established and well-delineated exceptions.'"*State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 373 N.E.2d 1252. Warrants may not be required, however, if the interest is not protected by the Fourth Amendment or if a recognized exception applies. The Fourth Amendment does not apply to things exposed to public view. *Katz v. United States* (1967), 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576

**{¶11}** The Twelfth District held in *State/City of Mason v. Napier* (Dec. 26, 1995), No. CA 95-04-031,

**{¶12}** "Appellant was playing loud music and holding a loud party in a garage. The garage door was open, permitting individuals to wander in and out of the party. The noises were audible from the street and nearby residences. Appellant made no effort to keep the activities within private. Since the general public was able to peer into the garage, there is no reason the police officers should be precluded from also observing, and there exists no expectation of privacy. See *Texas v. Brown* (1980), 460 U.S. 730, 740, 103 S.Ct. 1535, 1542. Thus, the acts of the police officers in approaching and entering the garage, although involving a portion of appellant's residence, were reasonable under the circumstances and not a search within the meaning of the Fourth Amendment.

**{¶13}** "The curtilage is an area around a person's home upon which he or she may reasonably expect the sanctity and privacy of the home. For Fourth Amendment

purposes, the curtilage is considered part of the home itself. *Oliver v. United States* (1984), 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214. The extent of a home's curtilage is resolved by considering four main factors: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the use to which the area is put; and (4) the steps taken to protect the area from observation by passersby. *U.S. v. Dunn* (1987), 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326.

{¶14} "Absent a warrant, police have no greater rights on another's property than any other visitor has. Thus, it has been held that the only areas of the curtilage where officers may go are those impliedly open to the public. This area includes walkways, driveways, or access routes leading to the residence. *State v. Dyreson* (Wash.App.2001), 104 Wash.App. 703, 17 P.3d 668; *State v. Pacheco* (Mo.App.2003), 101 S.W.3d 913, 918; *State v. Johnson (N.J.* 2002), 171 N.J. 192, 793 A.2d 619. The guiding principal is that a police officer on legitimate business may go where any "reasonably respectful citizen" may go. *Dyreson,* supra; see, also, *State v. Tanner* (Mar. 10, 1995), 4th Dist. No. 94CA2006. Police are privileged to go upon private property when in the proper exercise of their duties. See *State v. Chapman* (1994), 97 Ohio App.3d 687, 647 N.E.2d 504."

{¶15} Here, Officer Garrison testified he responded to a loud music complaint in the area of Birch and 10th Street. Upon arriving at the residence he observed the loud music coming from a detached garage in the rear of the residence. He could see a fire pit or an actual fire on the driveway at the corner of the house. The garage was open. He could hear a lot of loud noise, talking, and music coming from the party. The Officer

testified, he "had to walk up to the front area off of 10th Street" where "you go off back through the side yard to get back to the garage." He could hear talking and loud music coming from the garage. We find the trial court did not err in denying this portion of Appellant's motion to suppress as Officer Garrison was on legitimate business and was in a location where any reasonable citizen may go when approaching the property.

{¶16} The first assignment of error is overruled.

II.

{¶17} In the second assignment of error, Appellant maintains Officer Garrison conducted an unlawful search of his pockets and; thereafter, an improper arrest.

{¶18} As set forth in the Statement of the Facts and Case, supra, upon approaching the garage, Officer Garrison heard a female voice say, "Hey, why don't you get that fat joint out of your pocket, and let's smoke it." He heard a male voice say he didn't have a joint, and the female voice responded, "I seen you put that fat joint in your pocket. Why don't you get it out so we can smoke it?" Officer Garrison then walked around the corner and said, "Yeah, why don't you get it out." Officer Garrison asked Appellant what he had in his pockets, and Appellant said "nothing." The officer asked Appellant to show him, and Appellant pulled his pockets halfway out, and the marijuana was visible in his hand. Officer Garrison asked Appellant if he had anything else, and Appellant produced rolling papers.

{¶19} Officer Garrison testified at the suppression hearing,

{¶20} "Q. And you said to him, what was the first thing that you said to him if you can recall?

**{¶21}** "A. As I was walking around the corner after she told him the second time that she watched him put it in his pocket to get it out so they could smoke it, I said, Yeah, why don't you get it out of your pocket.  Or, 'Why don't you get it out', or something to that effect.

**{¶22}** "Q. And did he ever respond to that or did he reach into his pocket?

**{¶23}** "A. He said he didn't have anything.

**{¶24}** "Q. Okay.  So at that point, you had, you had somebody claiming he had it.  He had told her and you that he didn't.  So what did you do next?

**{¶25}** "A. I believe at that point I asked him why she would be saying, you know, that she just watched him put one in his pocket.

**{¶26}** "Q. Right.  Was there any response or?

**{¶27}** "A. Like he was just like he did not know.  Something to that effect.

**{¶28}** "Q. So then what, did you tell him to empty his pockets?

**{¶29}** "A. I asked him what he had in his pockets.

**{¶30}** "Q. And was there an answer to that?

**{¶31}** "A. Yeah.  He kind of touched the front of his pockets and said nothing.

**{¶32}** "Q. Okay.  So then what did you do?

**{¶33}** "A. I said why don't you show me what you have in your pockets.  And that's when he reached in and pulled out the stuff that was in his pockets.

**{¶34}** "Q. Okay.  You said, as best you can recall, Why don't you show me what's in your pockets.

**{¶35}** "A. Yes.

**{¶36}** "Q. So then he emptied, I'm just saying he emptied his pocket or pulled everything out?

**{¶37}** "A. He reached into his pockets and kind of pulled his hands back out with some stuff with his hands still half in his pocket and half out of his pocket, and just kind of white palms up showing what he had.

**{¶38}** "Q. And then could you see the, any contraband at that time?

**{¶39}** "A. Yes."

**{¶40}** Tr. at 23-25.

**{¶41}** The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.

**{¶42}** In *State v. Hope,* 2009-Ohio-853, the Eighth District held,

**{¶43}** "…when an officer uses a show of authority and commands a person to adhere to an order to stop, the command to stop constitutes a Fourth Amendment seizure under *Terry.' State v. Smith,* Cuyahoga App. No. 89432, 2008–Ohio–2361.

**{¶44}** By analogy, the record demonstrates Officer Garrison told Appellant, "Yeah, why don't you get it out." We find Officer Garrison's statement is tantamount to an order or command; therefore, constitutes a Fourth Amendment search. We do not find this to be a consensual search under the totality of the circumstances. We further find there was insufficient probable cause to justify a search.

{¶45} The judgment of the Ashland Municipal Court denying Appellant's motion to suppress is reversed, and the matter remanded to the trial court for further proceedings in accordance with the law and this opinion.

By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur

_____

HON. WILLIAM B. HOFFMAN


_____

HON. PATRICIA A. DELANEY


_____

HON. CRAIG R. BALDWIN

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                                   :
                                                :
    Plaintiff-Appellee                      :
                                                :
-vs-                                            :                    JUDGMENT ENTRY
                                                :
CHRISTOPHER J. MECHLING                         :
                                                :
    Defendant-Appellant                     :                    Case No. 12-COA-040


For the reason stated in our accompanying Opinion, the judgment of the Ashland

Municipal Court denying Appellant's motion to suppress is reversed, and the matter

remanded to the trial court for further proceedings in accordance with the law and our

Opinion.  Costs to the State.


_____
HON. WILLIAM B. HOFFMAN


_____
HON. PATRICIA A. DELANEY


_____
HON. CRAIG R. BALDWIN