*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1749**

Jack Eugene Christiansen, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed July 14, 2014
Affirmed
Smith, Judge**

St. Louis County District Court
File No. 69HI-CV-13-213

Gordon C. Pineo, Deal & Pineo, P.A., Virginia, Minnesota (for appellant)

Lori Swanson, Attorney General, Jacob Fischmann, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Smith, Presiding Judge; Connolly, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment under Minn. Const. art. VI, § 10.

**SMITH**, Judge

We affirm the district court's decision sustaining the revocation of appellant's driving privileges because the preponderance of the evidence shows that appellant consented to the warrantless blood draw and his pretest right to counsel was vindicated.

**FACTS**

On January 30, 2013, St. Louis County deputy Andrew Fiero responded to the scene of an accident near Orr and found a vehicle lying on its side in the ditch. The driver, later identified as appellant Jack Eugene Christiansen, told Deputy Fiero that he had swerved to miss a deer and went into the ditch. Deputy Fiero noted that Christiansen smelled strongly of an alcoholic beverage and Christiansen admitted to drinking two beers before driving. A field sobriety test indicated that Christiansen was impaired and a preliminary breath test (PBT) indicated an alcohol concentration of .216. Deputy Fiero arrested Christiansen and took him to the St. Louis County Sheriff's Office.

At the sheriff's office, Deputy Fiero read Christiansen the implied consent advisory, which informed Christiansen that under Minnesota law it was a crime to refuse to take a test to determine whether he was under the influence of alcohol and that he had a right to consult with an attorney before making a decision about testing. Christiansen indicated that he understood the advisory and that he wished to speak with an attorney. Deputy Fiero provided a telephone and telephone books. While Christiansen was on the telephone with an attorney, he asked Deputy Fiero for the numerical reading from the

PBT. Deputy Fiero told Christiansen that he had failed the test but declined to reveal the numerical PBT reading and declined to speak with the attorney directly.

When Christiansen finished his telephone call he indicated that he would submit to a blood test. Deputy Fiero took Christiansen to a hospital where a lab technician drew a blood sample. Deputy Fiero did not seek or obtain a warrant for the blood draw. The test revealed a blood alcohol concentration of .20.

Respondent Commissioner of Public Safety revoked Christiansen's driver's license under Minnesota's Implied Consent Law, Minn. Stat. §§ 169A.50–.53. Christiansen challenged the revocation in the district court, arguing that under *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), the search of his blood was not within a per se exception to the warrant requirement, that the commissioner did not prove either exigent circumstances or that he validly consented to the search, and that his right to counsel was violated. The district court sustained the revocation, concluding that although the totality of the circumstances does not demonstrate exigent circumstances, it does demonstrate consent. The district court also concluded that Christiansen's "limited right to counsel . . . was vindicated."

## D E C I S I O N

### I.

"When the facts are not in dispute, the validity of a search is a question of law subject to de novo review." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004). The United States and Minnesota Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10.

Taking a urine sample from someone constitutes a search under the Fourth Amendment. *Brooks*, 838 N.W.2d at 568. A warrantless search is generally unreasonable unless it falls within a recognized exception to the warrant requirement. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). One such exception is consent. *Brooks*, 838 N.W.2d at 568.

"For a search to fall under the consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented." *Id.* The state must show that it is more likely than not that the defendant's consent was free and voluntary. *See City of Lake Elmo v. Metro. Council*, 685 N.W.2d 1, 4 (Minn. 2004) ("The preponderance of the evidence standard requires that to establish a fact, it must be more probable that the fact exists than that the contrary exists."). To determine whether a defendant consented, we consider "the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Brooks*, 838 N.W.2d at 569 (quotation omitted). "[C]onsent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned." *Id.* Merely "acquiescing to a claim of lawful authority" is not consent, but in regards to the implied consent law, "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 569, 570.

Christiansen argues that he "agreed to take a test based upon the contents of the Implied Consent Advisory, i.e. if he refused he would be charged with a crime. This is not voluntary. This is not a choice. This is coercive." The Minnesota Supreme Court directly addressed and rejected this argument in *Brooks*, holding that a driver may validly

consent to testing even after he is informed that refusal to so do is a crime. *Id.* at 570. The *Brooks* court concluded that nothing in the record suggested that the defendant "was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* at 571 (quotation omitted). The same is true here. Christiansen was read the implied consent advisory and stated that he understood the advisory and wanted to contact an attorney. After speaking with an attorney, he agreed to take a blood test. Deputy Fiero testified that he did not raise his voice, stand imposingly over Christiansen, or brandish a weapon at any point, and that Christiansen was cooperative and respectful throughout their interactions. Christiansen has not disputed any of that testimony and points to no evidence of coercion other than the giving of the implied consent advisory.

Additionally, the *Brooks* court stated that the defendant consulting "with counsel before agreeing to take each test reinforces the conclusion that his consent was not illegally coerced." Christiansen's consultation with counsel reinforces our conclusion that his consent was not illegally coerced. To the contrary, the totality of the circumstances indicates that his consent was voluntary.

## II.

Christiansen also asserts that his pretest right to counsel was not vindicated because Deputy Fiero refused to disclose the numerical reading from the PBT. We reject this assertion because we agree with the district court's conclusion that "[t]here is no legal authority requiring an arresting officer to disclose . . . the exact reading of a PBT" under these circumstances.

5

A person arrested for driving while impaired has a limited right under the Minnesota Constitution to consult with counsel before deciding whether to submit to a chemical test. *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991) (applying Minn. Const. art. I, § 6). "The determination of whether an officer vindicates [this right] is a mixed question of law and fact, 'requiring the appellate court to apply the controlling legal standard to historical facts as determined by the [district] court.'" *Hartung v. Comm'r of Pub. Safety*, 634 N.W.2d 735, 737 (Minn. App. 2001) (quoting *State v. Wiernasz*, 584 N.W.2d 1, 3 (Minn. 1998)), *review denied* (Minn. Dec. 11, 2001). When the facts are not disputed, as here, we make a legal determination whether the driver had a reasonable opportunity to consult with counsel based on the given facts. *Id.* "A police officer may vindicate a driver's limited right to counsel by providing a telephone and a reasonable amount of time to contact and speak with an attorney." *Id.* at at 738 (quotation omitted).

In *Hartung*, we considered facts functionally indistinguishable from those of this case. The defendant had been arrested after failing a PBT. *Id.* at 737. At the police station, an officer read the implied consent advisory, and the defendant said he understood the advisory and wanted to speak with an attorney. *Id.* While on the phone with his attorney, the defendant asked the officer for the PBT reading. *Id.* The officer stated that he had failed the test but declined to provide the precise result of the digital PBT. *Id.* After completing the attorney consultation, the defendant agreed to take a breath test, which revealed a blood alcohol concentration above the legal limit. *Id.* The defendant's driving privileges were revoked and the district court sustained the

6

revocation. *Id*. After reviewing the limited pretest right to counsel established in *Friedman*, we concluded that the defendant "was not denied meaningful consultation with his attorney when the officer refused to provide him with the exact PBT result." *Id.* at 738. We affirmed the district court. *Id.* at 739.

Although Christiansen acknowledges *Hartung*, he makes no meaningful effort to distinguish it from this case. Instead, he details a criminal defense attorney's expert testimony that the precise PBT result is important because it helps an attorney advise a client on whether to consent to the chemical test. We acknowledge that there is logic to the expert witness's assertion; defendants risk a greater penalty if a chemical test reveals a blood alcohol concentration above twice the statutory limit than if they refuse the chemical test. *See* Minn. Stat. § 169A.54, subd. 1(2), (3)(iii) (2012) (providing that "refusal to submit to chemical test[ing]" carries a mandatory minimum license revocation of 90 days, while "an offense occurring when a person has an alcohol concentration of twice the legal limit or more" carries a mandatory minimum revocation of one year). Thus an attorney who knows that a client's PBT reading was above twice the legal limit might advise the client to refuse chemical testing. But Christiansen cites no legal authority to support his position that an officer must provide the precise PBT reading. Instead, he suggests that we depart from *Hartung* and chart a new course. We decline to do so, and conclude that Christiansen's limited pretest right to counsel was vindicated under these facts.

**Affirmed.**