Chad HAASE, petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. A03–1595.

Court of Appeals of Minnesota.

May 25, 2004.

Rodd A. Tschida, St. Paul, MN, for appellant.

Mike Hatch, Attorney General, Sheila M. Fitzgerald Steichen, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; SCHUMACHER, Judge; and WILLIS, Judge.

## OPINION

WRIGHT, Judge.

In this appeal from the district court's decision sustaining the revocation of his driver's license under the implied-consent law, appellant argues that the revocation is

based on evidence obtained from a police officer's warrantless entry into the garage of appellant's home, in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 10, of the Minnesota Constitution. We reverse.

## FACTS

The Farmington police department received a call from an identified citizen who reported that a vehicle traveling on Pilot Knob Road had crossed the center line several times. The caller gave a description and the license-plate number of the vehicle. Officer Gary Rutherford responded to the call but initially was unable to locate the vehicle. He ran a license-plate check and learned that the vehicle was registered to appellant Chad Haase. The officer proceeded to Haase's residence, where he saw the reported vehicle pulling into the garage.

Without activating any emergency lights, the officer parked his car and walked to the open garage. The officer stood at the threshold of the open garage, behind the vehicle, and waited for the driver to emerge from the car. While the officer was waiting, Haase caused the garage door to begin to close. The officer interrupted the closing door by kicking his leg out to trip the auto-reverse sensor. The garage door retreated. When Haase emerged from the vehicle, he was startled by the officer's presence. After explaining to Haase why he was there, the officer asked to speak with Haase about the reported incident. While the officer interviewed Haase inside the garage, Haase exhibited signs of intoxication. Haase agreed to submit to a preliminary breath test, which registered above the legal limit. The officer then arrested Haase for driving while impaired by alcohol. Haase took the implied-consent test, which revealed an alcohol concentration of .10 or more, and

the Commissioner of Public Safety revoked Haase's driver's license pursuant to the implied-consent law. *See* Minn.Stat. § 169A.52, subd. 4 (2002). The district court sustained the license revocation, and Haase moved for reconsideration. On reconsideration, the district court upheld the license revocation. This appeal followed.

## ISSUE

Did appellant have a reasonable expectation of privacy in his garage?

## ANALYSIS

 Haase argues that the revocation of his driver's license under the implied-consent law should be rescinded. He contends that any evidence of his intoxication should be suppressed because the officer's warrantless entry into Haase's garage constituted an unreasonable search in violation of the United States and Minnesota constitutions. When the facts are not in dispute, the validity of a search is a question of law subject to de novo review. *State v. Bauman*, 586 N.W.2d 416, 419 (Minn.App.1998), *review denied* (Minn. Nov. 24, 1998). When reviewing the constitutionality of a search, we independently analyze the undisputed facts to determine whether evidence resulting from the search should be suppressed. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992). The district court's conclusions of law will not be overturned absent erroneous construction and application of the law to the facts. *Dehn v. Comm'r of Pub. Safety*, 394 N.W.2d 272, 273 (Minn.App.1986).

Under the implied-consent law, an officer may require a person to take a test if the officer has probable cause to believe that the person was driving while impaired and that any one of four conditions exist. Minn.Stat. § 169.51, subd. 1(b) (2002). Haase argues that the evidence providing probable cause to believe that he was driv-

ing while impaired should be suppressed because it was obtained in an unconstitutional manner and that his license revocation should be rescinded accordingly.

■ The Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution prevent police from entering constitutionally protected areas without a warrant, subject to limited exceptions. *In re Welfare of B.R.K.*, 658 N.W.2d 565, 578 (Minn. 2003). This constitutional protection extends to all places where an individual has a reasonable expectation of privacy, including the home and its curtilage. *State v. Carter*, 569 N.W.2d 169, 176–77 (Minn. 1997), *rev'd on other grounds sub nom. Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

■ It has been long recognized that a garage adjoining the home enjoys the same constitutional protections against warrantless entry as the home. *See Taylor v. United States*, 286 U.S. 1, 5, 52 S.Ct. 466, 467, 76 L.Ed. 951 (1932); *State v. Crea*, 305 Minn. 342, 345, 233 N.W.2d 736, 739 (1975). This principle is so well grounded that many courts do not undertake any expectation-of-privacy analysis. *See, e.g., United States v. Ojeda*, 276 F.3d 486, 489 (9th Cir.2002); *People v. Robles*, 23 Cal.4th 789, 97 Cal.Rptr.2d 914, 3 P.3d 311, 314 (2000). The majority rule, almost without exception, provides that the Fourth Amendment applies equally to the garage and the home.[1] *See, e.g., State v. Legg*, 633 N.W.2d 763, 768 (Iowa 2001);

*State v. Winkler*, 552 N.W.2d 347, 352 (N.D.1996). Furthermore, the Minnesota Supreme Court has explicitly recognized that the garage is part of the curtilage and is entitled to the same expectation of privacy as the home. *Crea*, 305 Minn. at 345, 233 N.W.2d at 739.

■ The commissioner relies on *Tracht v. Comm'r of Pub. Safety* to justify the officer's entry into the garage. 592 N.W.2d 863 (Minn.App.1999), *review denied* (Minn. July 28, 1999). In *Tracht*, we acknowledged that constitutional protections do not extend to areas around the home that are "impliedly open." *Id.* at 865. Such areas are not cloaked with a reasonable expectation of privacy because they are areas where a visitor may be expected to go. *Carter*, 569 N.W.2d at 176. Impliedly open areas include ordinary routes of access to the entrance of a residence, such as driveways or sidewalks. *Crea*, 305 Minn. at 346, 233 N.W.2d at 739.

In *Tracht*, a resident had left the overhead door of his attached garage open. *Tracht*, 592 N.W.2d at 864. Police entered the garage to access the service door to the resident's home. *Id.* We held under the undisputed facts that the garage was impliedly open to the police solely "for the purpose of knocking on the service door," not for "looking for evidence in the garage." *Id.* at 865.

There are at least three reasons for distinguishing the instant case from *Tracht*. First, Haase had not left his over-

---

**1.** Additional cases reaching the same result include *State v. Cochrane*, 84 S.D. 527, 173 N.W.2d 495, 497 (1970); *State v. Kennedy*, 20 Conn.App. 354, 567 A.2d 841, 844 (1989); *People v. Alexander*, 272 Ill.App.3d 698, 209 Ill.Dec. 65, 650 N.E.2d 1038, 1043 (1995); *People v. Dugan*, 102 Mich.App. 497, 302 N.W.2d 209, 212 (1980); *Brown v. City of Oklahoma City*, 721 P.2d 1346, 1349 (Okla.Ct. App.1986), *aff'd in part, rev'd in part on other* grounds, 721 P.2d 1356 (Okla.1986); and *Commonwealth v. Ealy*, 12 Va.App. 744, 407 S.E.2d 681, 685 (1991). Our research found only one case that recognized an expectation of privacy in a garage, but still allowed warrantless entry without an applicable warrant exception. *See Bies v. State.*, 76 Wis.2d 457, 251 N.W.2d 461, 467–68 (1977) (allowing entry where officer saw contraband in plain view from a nonpublic vantage point).

head door open. Rather, at the time of the police encounter, Haase was closing the garage door after his entry. We find no basis to conclude that a person forfeits a reasonable expectation of privacy merely because that person briefly opens a door to enter the home. *Cf. People v. Stockman,* 159 Misc.2d 730, 606 N.Y.S.2d 864, 866 (N.Y.J.Ct.1993) ("[N]o one can argue that if a householder opens the outer door ... that such opening is an abandonment of the right to be free from physical invasion into the dwelling.").

Second, the officer accomplished the entry by interrupting the closing of Haase's garage door. To conclude that the garage was impliedly open, we must be persuaded that the officer was in a place that an ordinary visitor would be expected to go. *See Crea,* 305 Minn. at 345, 233 N.W.2d at 739. The facts do not support this conclusion. The officer intruded into an unusually dangerous place, the threshold of the overhead door as the door was closing. The act of closing the door forecloses any reasonable conclusion that the garage was impliedly open. Entry through a closing garage door is not expected of an ordinary visitor. *Cf. State v. Barry,* 94 N.M. 788, 617 P.2d 873, 875 (1980) (finding, in dictum, that officer's action to open garage door ordinarily would be an unconstitutional intrusion). Indeed, such entry is discouraged. *Id.* Accordingly, we conclude that Haase continued to have a reasonable expectation of privacy in his garage because it was not impliedly open to the public.

■ Third, the officer did not enter the garage to access a door to the home, but to investigate whether Haase was driving while impaired. By looking for evidence,

the officer engaged in the exact conduct that *Tracht* cautioned against. *See Tracht,* 592 N.W.2d at 865. Moreover, Haase's driving offense, though serious, does not supply exigent circumstances that justify a warrantless entry into a constitutionally protected area.[2] *See Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984).

If police enter a constitutionally protected area without a warrant, that entry is presumed to be unreasonable, and evidence obtained as a result must be suppressed. *Othoudt,* 482 N.W.2d at 222. For that evidence to be otherwise admissible, the state has the burden to establish that the entry was justified by an applicable exception to the warrant requirement. *State v. Ture,* 632 N.W.2d 621, 627 (Minn. 2001). The commissioner concedes, and we agree, that no exception to the warrant requirement applies here. We, therefore, conclude that the officer's entry into the garage is unreasonable. Thus, the fruits of the officer's warrantless entry, including the ensuing interview and the evidence of intoxication, must be suppressed.

■ The commissioner argues for the first time on appeal that, even if the officer entered Haase's garage in violation of the warrant requirement, the inevitable-discovery exception to the exclusionary rule applies. *See State v. Harris,* 590 N.W.2d 90, 105 (Minn.1999); *see also Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984) (holding that an exception to the Fourth Amendment exclusionary rule applies where the police would have obtained the evidence if no illegality had occurred). Generally, we will not consider matters that were not

---

**2.** A few jurisdictions recognize that entry into a garage may be permissible where police have probable cause to believe a crime is in progress. *See People v. Houze,* 425 Mich. 82, 387 N.W.2d 807, 811–12 (1986); *People v. Farenga,* 81 Misc.2d 287, 364 N.Y.S.2d 982, 987 (N.Y.Sup.Ct.1975).

raised before the district court. *Fisher v. Comm'r of Pub. Safety,* 389 N.W.2d 771, 773 (Minn.App.1986); *Connolly v. Comm'r of Pub. Safety,* 373 N.W.2d 352, 354 (Minn. App.1985). Here, in the absence of a fully developed record enabling our consideration of this issue, we decline to address it for the first time on appeal.

### DECISION

Because Haase did not abandon his reasonable expectation of privacy in his garage by opening the garage door to gain entry, the district court erred in declining to suppress the evidence seized pursuant to the officer's warrantless entry. The district court's order sustaining the revocation of Haase's driver's license is reversed.

**Reversed.**