*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1929**

Steven Paul Scheiterlein, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed July 7, 2014
Reversed
Reilly, Judge**

Stearns County District Court
File No. 73-CV-13-4472

Steven Paul Scheiterlein, Rice, Minnesota (pro se respondent)

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Stauber, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**REILLY**, Judge

Appellant Minnesota Commissioner of Public Safety appeals the district court's rescission of respondent Steven Scheiterlein's driver's license revocation after it concluded that respondent's consent to the breath test was coerced. We reverse.

**FACTS**

Around 2:16 a.m. on April 7, 2013, Officer Megan McDonald, a police officer with the St. Cloud Police Department, noticed a vehicle driving without its taillights illuminated. Officer McDonald initiated a traffic stop and learned that respondent was the driver of the vehicle. Officer McDonald noted that respondent's eyes were "bloodshot, watery, and glassy"; he smelled of alcohol; and he appeared confused when she asked him why it took so long for him to pull over once she had activated her emergency lights. Respondent told Officer McDonald that he had drunk four or five beers that night.

Officer McDonald then administered three field sobriety tests, all of which respondent failed. Respondent agreed to take a preliminary breath test (PBT), and his test result was .180. Officer McDonald arrested respondent for DUI and brought him to the Stearns County jail. At 3:06 a.m., Officer McDonald began reading respondent the Minnesota implied-consent advisory, which states that refusal to take a test to determine whether a person is under the influence of alcohol is a crime and that a person has a right to consult with an attorney before deciding whether to submit to the test. Respondent indicated that he understood what Officer McDonald had explained and wished to consult his personal attorney. Respondent used his cell phone to call his attorney several times but did not receive an answer. Respondent then used a phonebook to find, call, and speak with an attorney. After doing so, respondent indicated he would take a breath test. The implied-consent advisory was finished at 3:47 a.m., respondent took a breath test at 4:07 a.m., and his test result was .17.

Appellant revoked respondent's driver's license under Minn. Stat. § 169A.52, subd. 4 (2012), and respondent subsequently sought rescission of the revocation. An implied-consent hearing was held on July 16, 2013, where respondent did not appear and appellant entered Officer McDonald's investigative report, the implied-consent advisory read to respondent, and respondent's breath-test results into evidence without objection. The parties submitted the issue on the briefs.

The district court rescinded the revocation of respondent's driver's license. The district court, relying on this court's opinion in *State v. Netland*, 762 N.W.2d 202 (Minn. 2009), *abrogated in part by Missouri v. McNeely*, 133 S. Ct. 1552 (2013), *as recognized in State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014), concluded that respondent's consent to the breath test was coerced because a criminal sanction was attached to the refusal to submit to the test. Consequently, it rescinded the revocation of respondent's driver's license.

This appeal follows.

## D E C I S I O N

Appellant argues several bases for the admission of respondent's breath test. Because we conclude that, under the totality of the circumstances, respondent consented to the test, we do not reach appellant's other arguments.

Appellant contends the district court erred by determining respondent's consent to the breath test was coerced. Appellant does not challenge the facts as found by the district court. "When the facts are not in dispute, the validity of a search is a question of law subject to de novo review." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745

3

(Minn. App. 2004). We must "independently analyze the undisputed facts to determine whether evidence resulting from the search should be suppressed." *Id.*

The United States and Minnesota Constitutions guarantee "the right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. A breath test constitutes a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989). Searches conducted without a warrant are generally unreasonable, unless an exception to the warrant requirement applies. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). Consent is such an exception. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973); *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). "For a search to fall under the consent exception, the State must show by a preponderance of the evidence that consent was given freely and voluntarily." *Diede*, 795 N.W.2d at 846. In determining whether consent was voluntary, we examine "the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *State v. Harris*, 590 N.W.2d 90, 102 (Minn. 1999) (quotation omitted). "[C]onsent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned." *Brooks*, 838 N.W.2d at 569.

Respondent argued to the district court that he did not consent to the test because the "choice" between whether to submit to the test or be charged with test refusal was not really a choice at all because the consequence of refusing to take the test was a criminal sanction. The Minnesota Supreme Court rejected this argument in *Brooks*, 838 N.W.2d

4

at 570, when it stated that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." Therefore, the district court erred by concluding that respondent's consent was not free and voluntary simply because he agreed to take the test after being read the implied-consent advisory.

"Whether consent is voluntary is determined by examining the totality of the circumstances." *Brooks*, 838 N.W.2d at 568. The record indicates that respondent was arrested for DUI after he failed three field sobriety tests and a PBT indicated that his alcohol concentration was .180. These facts gave Officer McDonald probable cause to arrest respondent and to administer the implied-consent advisory. The record shows that Officer McDonald read respondent the implied-consent advisory, and respondent indicated that he understood it. Respondent then said he wanted to speak with an attorney and, after several phone calls, was able to consult with one. "[T]he ability to consult with counsel about an issue supports the conclusion that a defendant made a voluntary decision." *Id.* at 572. He then agreed to take a breath test, which registered an alcohol concentration of .17. The record demonstrates that respondent was not subjected to repeated police questioning, and less than an hour elapsed between the time respondent was stopped and when Officer McDonald began reading the implied-consent advisory. *See id.* at 571 (noting that repeated police questioning or days in custody are factors weighing against voluntary consent). In addition, respondent did not provide any additional facts supporting his contention that he was coerced into taking the test. Under

5

the totality of the circumstances, respondent consented to the test. We therefore reverse the district court's order rescinding the revocation of respondent's driver's license.

**Reversed.**