*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1328**

Jason Edward Tast, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed July 14, 2014
Affirmed
Schellhas, Judge**

Sherburne County District Court
File No. 71-CV-12-1384

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, Rory Mattson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Peterson, Judge; and Connolly, Judge.

# UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's order sustaining the revocation of his driver's license, arguing that the district court erred because it should have suppressed his urine-test results. We affirm.

**FACTS**

After respondent Minnesota Commissioner of Public Safety revoked appellant Jason Tast's driver's license for driving while impaired, Tast challenged the revocation and argued at his implied-consent hearing that the district court must suppress his urine-test results because the urine sample was obtained without a search warrant. The parties stipulated to the facts.

Sherburne County Deputy Jared Pesta stopped Tast's vehicle after observing it repeatedly swerve across white street lines. When Deputy Pesta spoke with the driver, Tast, he noticed that Tast's breath smelled strongly of alcohol, Tast's speech was slurred, and his eyes were bloodshot and watery. When Deputy Pesta asked Tast how much he had drunk, Tast responded, "Enough." After Tast failed field sobriety tests, Deputy Pesta arrested him on suspicion of driving while impaired, transported him to the Sherburne County Jail, and read the Minnesota Implied Consent Advisory to him. Tast stated that he understood the advisory, declined to speak to an attorney, and agreed to submit to a urine test. The urine test showed an alcohol concentration of 0.27. Deputy Pesta did not obtain a search warrant.

The district court sustained the revocation of Tast's driver's license after finding, in relevant part, that Tast "freely and voluntarily provided his consent to urine testing."

This appeal follows.

**D E C I S I O N**

"When the facts are not in dispute, the validity of a search is a question of law subject to de novo review." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004).

The United States and Minnesota Constitutions prohibit warrantless searches and seizures, subject to limited exceptions. U.S. Const. amend. IV; Minn. Const. art I, § 10; *see generally Bailey v. United States*, 133 S. Ct. 1031, 1037 (2013) (noting that "[t]he Fourth Amendment[ is] applicable through the Fourteenth Amendment to the States"). Taking a urine sample is a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617, 109 S. Ct. 1402, 1413 (1989). If an individual consents to a search, the police do not need a warrant. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973). "[T]he State must show by a preponderance of the evidence that the defendant freely and voluntarily consented" to the search. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). "Whether consent is voluntary is determined by examining the totality of the circumstances." *Id.* at 568 (quotation omitted). Under *Brooks*, consent "is assessed by examining all of the relevant circumstances." *Id*. at 569. This examination requires us to "consider the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id*. (quotation omitted). The "nature of the encounter includes how the police came to suspect [the driver] was driving under the influence, their request that he take the chemical tests, which included whether they read him the implied consent advisory, and whether he had the right to consult with an

3

attorney." *Id.* "[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570.

Here, Deputy Pesta arrested Tast on suspicion of driving while impaired after observing indicia of alcohol impairment. Tast stated that he understood the Minnesota Implied Consent Advisory that Deputy Pesta read to him. Tast declined to speak to an attorney and agreed to submit to a urine test.

Tast argues that "*State v. Brooks* did little more than affirm the fact that consent is determined on a case-by-case-basis [sic], under a 'totality of the circumstances,' [so] there can be no real argument that Tast somehow consented to this warrantless search as a matter of law." He argues that his consent was coerced because (1) he was in custody and under arrest when Deputy Pesta read him the implied-consent advisory, (2) the advisory is coercive because it states that a chemical test is "'required' by law," and (3) he did not speak to an attorney. But the police arrested Brooks, transported him to the county jail, and read him the implied-consent advisory, after which he consented to submit to a chemical test. *Id.* at 565–66. The *Brooks* court stated that the implied-consent advisory "made clear to [Brooks] that he had a choice of whether to submit to testing." *Id.* at 572. The only significant distinction between this case and *Brooks* is that Brooks exercised the right to speak with an attorney and Tast did not.

We conclude that, under the totality of circumstances in this case, the district court did not err by declining to suppress Tast's urine-test results. We therefore affirm the district court's order sustaining the revocation of Tast's driver's license.

**Affirmed.**

4