*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1887**

Sheila Kay Thompson, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed July 21, 2014
Reversed
Schellhas, Judge**

Renville County District Court
File No. 65-CV-13-73

Curtis L. Reese, Olivia, Minnesota (for respondent)

Lori Swanson, Attorney General, Jacob Fischmann, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Halbrooks, Judge; and Toussaint, Judge.[*]

# UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's order rescinding the revocation of respondent's driver's license, arguing that the district court erred by concluding that a

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

warrant was required before requesting that respondent provide a sample of urine for chemical testing. We reverse.

## FACTS

Appellant Minnesota Commissioner of Public Safety revoked respondent Sheila Thompson's driver's license following a urine test that showed an alcohol concentration of 0.11. Thompson sought judicial review of her license revocation and moved to suppress the results of the urine test. At the judicial review hearing, Renville Police Officer Quentin Pomplun testified that he stopped Thompson's vehicle after observing the vehicle weave within its lane and repeatedly swerve across a white street line. Upon approaching Thompson's vehicle, Officer Pomplun noticed an "extremely strong" odor of alcohol from within the car, Thompson's speech was slurred, and her eyes were bloodshot and watery. Officer Pomplun asked Thompson how much she had to drink, and she stated that she had consumed two or three drinks. Thompson performed poorly on field sobriety tests.

Officer Pomplun arrested Thompson on suspicion of driving while impaired, transported her to the Renville County Jail, and read to her the Minnesota Implied Consent Advisory. Thompson stated that she understood the advisory, declined to speak to an attorney, and agreed to provide a urine sample for chemical testing. Officer Pomplun did not obtain a warrant for the urine sample. Thompson testified that she consumed three alcoholic drinks between 4:30 p.m. and 10:30 p.m. and sipped from another drink that was ordered during last call. Thompson testified that she crossed the white line at least once while driving. She also testified that, although Officer Pomplun

2

did not threaten her or yell at her when he read her the implied-consent advisory, she felt compelled to submit to his request for the urine test. The district court rescinded Thompson's license revocation after concluding that Thompson's consent was not a voluntary waiver for Fourth Amendment purposes.

This appeal follows.

## DECISION

"When the facts are not in dispute, the validity of a search is a question of law subject to de novo review." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004). We will not set aside the district court's findings unless they are clearly erroneous. *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002). We will overturn questions of law only if we determine that the district court has erroneously construed and applied the law to the facts of the case. *Dehn v. Comm'r Pub. Safety*, 394 N.W.2d 272, 273 (Minn. App. 1986).

The United States and Minnesota Constitutions prohibit warrantless searches and seizures, subject to limited exceptions. U.S. Const. amend. IV; Minn. Const. art I, § 10; *see generally Bailey v. United States*, 133 S. Ct. 1031, 1037 (2013) (noting that "[t]he Fourth Amendment[ is] applicable through the Fourteenth Amendment to the States"). Taking a urine sample is a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617, 109 S. Ct. 1402, 1413 (1989).

The commissioner argues that, under the totality of the circumstances, Thompson consented to the urine test. If an individual consents to a search, the police do not need a warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973).

3

"[T]he State must show by a preponderance of the evidence that the defendant freely and voluntarily consented" to the search. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). "Whether consent is voluntary is determined by examining the totality of the circumstances." *Id.* (quotation omitted). Under *Brooks*, consent "is assessed by examining all of the relevant circumstances." *Id.* at 569. This examination requires us to "consider the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* (quotation omitted). The "nature of the encounter includes how the police came to suspect [the driver] was driving under the influence, their request that he take the chemical tests, which included whether they read him the implied consent advisory, and whether he had the right to consult with an attorney." *Id.* "[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570.

The district court found that "[Thompson] was under arrest and at the county jail at the time she was read the Implied Consent advisory." The court then noted that "[g]iven that fact, a reasonable person in her position would not have felt free 'to terminate the encounter,' and was certainly 'more susceptible to police duress and coercion.'" The court concluded that Thompson's consent was "an insufficiently voluntary waiver for Fourth Amendment purposes" and suppressed the urine sample.

Thompson argues that the implied-consent advisory is coercive because it indicates that a driver is "required" to take the test. But, in light of *Brooks*, we conclude that the implied-consent advisory does not coerce the subject into taking the test; the

4

advisory instead "ma[kes] clear to [the subject] that [s]he ha[s] a choice of whether to submit to testing." *Id.* at 572. Thompson attempts to distinguish *Brooks* by pointing out that she did not consult an attorney. But Thompson does not dispute that Officer Pomplun offered her an opportunity to consult an attorney or that she declined to consult with an attorney. Thompson notes other allegedly distinguishing facts, including that the weather was cold when Officer Pomplun stopped her, but none of the facts materially distinguishes her case from *Brooks*.

Nothing in the record contradicts that Thompson understood the implied-consent advisory when Officer Pomplun read it to her, declined to speak to an attorney after Officer Pomplun advised her of her right to do so, and agreed to provide a urine test when Officer Pomplun asked her whether she would provide a sample. Under these circumstances, the district court erred by suppressing the urine-test results. We therefore reverse the district court's order rescinding the revocation of Thompson's driver's license. Because the commissioner prevails on the consent argument, we need not address the commissioner's alternative arguments.

**Reversed.**