*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1895**

Jason Homer Dodge, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed July 28, 2014
Reversed
Rodenberg, Judge**

Dakota County District Court
File No. 19AV-CV-13-447

Max A. Keller, Keller Law Offices, Minneapolis, Minnesota (for respondent)

Lori Swanson, Attorney General, Kristi A. Nielsen, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Chutich, Judge.

## UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant Commissioner of Public Safety challenges the district court's grant of respondent Jason Homer Dodge's motion to rescind the revocation of his driver's license. Because the totality of the circumstances demonstrates that respondent consented to the chemical test, we reverse.

## FACTS

The facts in the record consist of police reports and other documents to which the parties stipulated. On January 26, 2013, at approximately 12:30 a.m., Officer Kyle Posthumus observed a white sedan "traveling well over the posted speed limit" that passed two other cars while in the right lane. The sedan then pulled into a parking lot, still traveling at a high speed, and parked in a parking spot. Officer Posthumus approached the vehicle of respondent, the driver, and the officer "detected a strong odor of an alcoholic beverage coming from the vehicle in which [respondent] was the sole occupant." Respondent had red and watery eyes and admitted that he had consumed alcohol 20 minutes before the stop.

Respondent agreed to perform field sobriety tests. After performing poorly on the tests, respondent submitted to a preliminary breath test, with a reported result of .211. Officer Posthumus arrested respondent and transported him to the Burnsville Police Department. Around 1:09 a.m. respondent was read the Implied Consent Advisory and respondent asked to contact an attorney. Respondent made one phone call at 1:31 a.m., to his mother. At approximately 1:53 a.m. respondent stated that he no longer wanted to speak with an attorney and agreed to take a breath test (answering "yes sir" to Officer Posthumus's question of whether he would take a breath test according to the implied consent advisory sheet). A reading of .21 was reported by the testing device.

Appellant revoked respondent's driver's license, and respondent challenged the revocation. At an implied-consent hearing, the parties stipulated to the facts in the record and agreed that the only issue was the constitutionality of the breath test. The district

2

court subsequently held that the breath test was unconstitutional and granted the motion to rescind the revocation of respondent's driver's license. This appeal followed.

**D E C I S I O N**

"When the facts are not in dispute, the validity of a search is a question of law subject to de novo review. When reviewing the constitutionality of a search, we independently analyze the undisputed facts to determine whether evidence resulting from the search should be suppressed." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004) (citation omitted). A district court's conclusions of law are not overturned "absent erroneous construction and application of the law to the facts." *Id.*

The United States and Minnesota Constitutions guarantee people the right to be free from unreasonable searches. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Taking a sample of a person's breath is considered to be a search under the Fourth Amendment and, absent an applicable exception to the warrant requirement, requires a warrant. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). Consent is an exception to the warrant requirement. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). "For a search to fall under the consent exception, the [s]tate must show by a preponderance of the evidence that the defendant freely and voluntarily consented." *Id.* In determining whether consent is voluntary, we consider the totality of the circumstances, "including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 568-69. In the implied-consent context, the nature of the encounter includes how the police came to suspect that the driver was driving under the

3

influence, how the request to submit to chemical testing was made, including whether the driver was read the implied-consent advisory, and whether the driver had the right to consult with an attorney. *Id.* at 569. The provision of the law making a refusal to submit to testing a crime does not render consent involuntary as a matter of law. *Id.* at 571 (stating that although test refusal comes with criminal penalties and choosing whether to submit to chemical testing is difficult or unpleasant, the criminal process is replete with difficult and unpleasant choices).

The supreme court in *Brooks* examined the totality of the circumstances in analyzing whether the driver consented to testing. *Id.* at 569-72. The supreme court held that Brooks voluntarily consented to testing because he did not challenge whether there was probable cause to believe that he had been driving under the influence, he agreed that he was properly read the implied-consent advisory, he was not subject to repeated police questioning nor did he spend days in custody before consenting, and he consulted with an attorney before he consented to testing. *Id.* at 571-72.

Here, as in *Brooks*, respondent does not assert that the officers lacked probable cause to arrest him for driving while impaired. He does not argue that he was not read the implied-consent advisory. He was asked whether he would submit to testing and was not subject to coercive police questioning. He was not held in custody for any prolonged period of time. When asked whether he would take a breath test, respondent responded, "yes sir." Less than one hour elapsed between when respondent was read the implied-consent advisory and when he agreed to take a breath test.

4

Respondent argues only that his consent was not voluntary because he was advised that refusal to submit to a breath test may result in criminal prosecution. But *Brooks* clarified that the criminality of test refusal does not render consent involuntary. *Id.* at 572 (stating that "the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness"). In this case, there was no testimony at the hearing, and no fact questions exist on whether respondent was coerced to take the breath test. On our review of the police reports and other documents stipulated into evidence, and as a matter of law, the totality of the circumstances demonstrates that respondent voluntarily consented to the chemical test. Therefore, the district court erred in rescinding the revocation of respondent's driver's license.

**Reversed.**