*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1517**

State of Minnesota,
Respondent,

vs.

Stacy Jean Fouquette,
Appellant.

**Filed August 18, 2014
Affirmed
Smith, Judge**

Sherburne County District Court
File No. 71-CR-12-1239

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, Kevin C. Lin, Assistant County Attorney, Elk River, Minnesota (for respondent)

Jennifer M. Macaulay, Macaulay Law Offices, Ltd., St. Paul, Minnesota; and

Sharon R. Osborn, Osborn Law Office, LLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Halbrooks, Judge; and Hudson, Judge.

**SMITH**, Judge

We affirm appellant's conviction of driving while impaired because she consented to the warrantless search of her urine.

## FACTS

On June 19, 2012, at approximately 9:42 p.m., a Sherburne County deputy observed a vehicle driving along an unlit county road without its headlights illuminated. As the deputy prepared to stop the vehicle, he observed the driver, subsequently identified as appellant Stacy Jean Fouquette, throw "a large amount of liquid" out the driver's side window. The deputy stopped the vehicle. While talking with Fouquette, the deputy smelled "an overwhelming odor of an alcoholic beverage," saw "a large amount of liquid spread across the driver's side of the vehicle," and noticed that Fouquette's eyes were bloodshot and watery and that her speech was "very heavy and slurred." Fouquette claimed to have tossed a glass of water out her window; however, she handed the deputy the now-empty glass and he smelled the lingering odor of an alcoholic beverage. Fouquette admitted that she had consumed two or three vodka mixed drinks prior to driving and she was driving with an open bottle of vodka. Field sobriety tests indicated that Fouquette was impaired and a preliminary breath test indicated an alcohol concentration of 0.183.

The deputy arrested Fouquette and transported her to the county jail. There, at approximately 10:24 p.m., the deputy read Fouquette the Minnesota Implied Consent Advisory. Fouquette indicated that she understood the advisory, she did not wish to

consult with an attorney, and she would take a urine test. The test revealed an alcohol concentration of 0.16.

Respondent State of Minnesota charged Fouquette with two counts of driving while impaired. *See* Minn. Stat. § 169A.20, subd. 1(1) (driving under the influence of alcohol), (5) (driving with an "alcohol concentration at the time, or as measured within two hours of the time," of 0.08 or more) (2010). Fouquette moved to suppress the results of her urine test. After the United States Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), Fouquette argued that the urine test was a search requiring a warrant and that none of the warrant exceptions applied. The district court denied the suppression motion and Fouquette agreed to a trial on stipulated facts, thereby preserving the pretrial suppression issue for appeal. *See* Minn. R. Crim. P. 26.01, subd. 4. The state dismissed the driving-under-the-influence charge, and the district court found Fouquette guilty of violating Minn. Stat. § 169A.20, subd. 1(5).

Fouquette moved to stay sentencing pending a decision by the Minnesota Supreme Court in *State v. Brooks*. *See* 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The district court denied the motion and sentenced Fouquette to a fine and 90 days in jail; the district court stayed the jail time and all but $300 of the fine.

We stayed this appeal pending the release of *Brooks*. The stay has now been dissolved and the appeal reinstated.

## D E C I S I O N

"When the facts are not in dispute, the validity of a search is a question of law subject to de novo review." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745

3

(Minn. App. 2004). The United States and Minnesota Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Taking a urine sample from someone constitutes a search under the Fourth Amendment. *Brooks*, 838 N.W.2d at 568. A warrantless search is generally unreasonable unless it falls within a recognized exception to the warrant requirement. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). One such exception is consent. *Brooks*, 838 N.W.2d at 568.

"For a search to fall under the consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented." *Id.* In other words, the state must show that it is more likely than not that the defendant's consent was free and voluntary. *See City of Lake Elmo v. Metro. Council*, 685 N.W.2d 1, 4 (Minn. 2004) ("The preponderance of the evidence standard requires that to establish a fact, it must be more probable that the fact exists than that the contrary exists."). To determine whether the defendant consented, we consider "the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Brooks*, 838 N.W.2d at 569 (quotation omitted). "[C]onsent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned." *Id.* Merely "acquiescing to a claim of lawful authority" is not consent, but in regards to the implied consent law, "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 569, 570.

Fouquette argues that *Brooks* applies narrowly to the "extreme circumstances" of a "veteran drunk driver," and "by no means suggest[s] that reading the advisory alone

4

could not overbear the free will of a first-time offender." Fouquette argues that the state must "prove that [she] would have agreed to a test regardless of whether she was told that the law required her to do so and then threatened her with an additional crime if she didn't [agree]." Fouquette asserts that the state failed to present any evidence that her "acquiescence" to a urine test was "the product of a free and voluntary act."

Fouquette's arguments are without merit. Fouquette stipulated that the deputy read the implied consent advisory "as written and followed all standard procedures." In *Brooks*, the Minnesota Supreme Court concluded that although Minnesota's implied consent law presents suspects with a difficult and unpleasant choice, the nature of this choice does not constitute unlawful coercion. *Id.* at 571. Rather, "the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.* at 572. Considering the totality of the circumstances, the state proved by a preponderance of the evidence that Fouquette freely and voluntarily consented to the test. Because Fouquette consented, a warrant was not required. Accordingly, the district court correctly denied Fouquette's motion to suppress the test results.

**Affirmed.**

5