*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2263**

State of Minnesota,
Respondent,

vs.

Greer Elizabeth Dempster,
Appellant.

**Filed September 29, 2014
Affirmed
Smith, Judge**

Hennepin County District Court
File No. 27-CR-13-15777

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Martin J. Costello, Richfield City Attorney, Richfield, Minnesota (for respondent)

Thomas C. Gallagher, Minneapolis, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We affirm appellant's conviction of driving while impaired because the warrantless search of her breath was reasonable and because she expressly consented to the search.

# FACTS

On May 5, 2013, at approximately 8:15 a.m., Richfield Police Officer Cassandra Sisson conducted a stop of appellant Greer Elizabeth Dempster's vehicle after observing that the vehicle's license plate tabs were expired. While speaking with Dempster, Officer Sisson "immediately detect[ed] a strong odor of an alcoholic beverage coming from Dempster's breath and inside the vehicle," and she "noticed that [Dempster's] speech was slurred and her eyes were bloodshot and watery." When Officer Sisson asked for proof of insurance, Dempster took out two cards and "shuffled through them several times," stating that "she probably didn't have the right insurance card." Officer Sisson "immediately noticed that one of the insurance cards stated that it was valid until July of 2013." During the stop, Dempster "randomly reached up and turned her ignition key. The vehicle turned on and the radio began playing loud music. Dempster immediately turned the vehicle off." Dempster admitted consuming alcohol the previous evening, and field sobriety tests indicated that she was intoxicated.

Officer Sisson attempted to collect a sample of Dempster's breath with a preliminary breath test (PBT). *See* Minn. Stat. § 169A.41, subd. 1 (2012). Dempster stated that she understood the test and "formed a seal around the PBT straw but did not blow into it." When Officer Sisson advised Dempster that "she needed to blow into the PBT straw for it to obtain a reading," Dempster refused to blow. Officer Sisson began to arrest Dempster for driving while impaired, but paused when Dempster requested to take the PBT. After administering the PBT, which indicated an alcohol concentration 0.155, Officer Sisson arrested Dempster and transported her to the Richfield Police Department.

There, shortly before 9:00 a.m., Officer Sisson read Dempster the Minnesota Implied Consent Advisory. Dempster indicated that she understood the advisory and that she wished to consult with an attorney. Dempster was provided with a phone and a phone book but, after stating that her attorney was out of state and she did not have his number with her, she no longer wished to consult with an attorney. When asked if she would take a breath test, Dempster replied, "I did." Office Sisson responded, "This one's different. This is the one required by Minnesota's law." *See* Minn. Stat. § 169A.51, subd. 2(a)(1) (2012). Dempster asked, "What happens if I say no?" Officer Sisson replied, "If you say no, it's considered a test refusal which is a separate crime from the DWI." Dempster asked, "What does that mean?" Officer Sisson replied, "It means that if you refuse to take the test, then you'll be charged with a test refusal, as well as with a DWI." Officer Sisson then asked, "Do you want me to read this to you again?" Dempster replied, "No, that's fine," and agreed to take a breath test. The test revealed an alcohol concentration of 0.14.

Respondent State of Minnesota charged Dempster with two counts of fourth-degree driving while impaired. *See* Minn. Stat. § 169A.20, subd. 1(1) (driving under the influence of alcohol), (5) (driving with an "alcohol concentration at the time, or as measured within two hours of the time," of 0.08 or more) (2012). The state later amended the driving while impaired charge to careless driving. Dempster moved to suppress the results of her breath test, arguing, in part, that the implied consent advisory "requests 'consent' while it threatens criminal prosecution if this coerced 'consent' is not given." The district court denied the suppression motion, concluding that "consent is not

3

the basis of the search and the search meets the reasonable requirement of the Fourth Amendment." Subsequently, the Minnesota Supreme Court analyzed the implied consent statute in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). In light of *Brooks*, the district court reconsidered Dempster's motion to suppress, hearing testimony from Officer Sisson and Dempster. During the motion hearing, Dempster testified that neither Officer Sisson nor her colleague threatened her or exhibited "aggressiveness" and that she agreed to take a breath test to "get things moving forward so [she] could go home."

Pending the district court's decision on the motion, Dempster agreed to a trial on stipulated facts, thereby preserving the pretrial suppression issue for appeal. *See* Minn. R. Crim. P. 26.01, subd. 4. Concluding that Dempster "knowingly and voluntarily consented to chemical testing" and that the search was reasonable, the district court denied the motion to suppress and found Dempster guilty as charged. The district court sentenced Dempster to a fine and 30 days in the county workhouse, with 28 days stayed and the option to perform two days of community service in lieu of the workhouse. Dempster challenges her conviction of driving while impaired.

## DECISION

"When the facts are not in dispute, the validity of a search is a question of law subject to de novo review." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004); *see also State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). The United States and Minnesota Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. It is undisputed that taking a

4

breath sample from someone constitutes a search under the Fourth Amendment. *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). However, the state argues that the challenged search was not *unreasonable* and therefore it does not violate the Fourth Amendment. We agree.

A warrantless search may also be reasonable if it falls within a recognized exception to the warrant requirement. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). One such exception is express consent. *Brooks*, 838 N.W.2d at 568; *Stevens*, 2014 WL 3396522, at *6. "For a search to fall under [this] consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented." *Brooks*, 838 N.W.2d at 568. In other words, the state must show that it is more likely than not that the defendant's consent was given freely and voluntarily. *See City of Lake Elmo v. Metro. Council*, 685 N.W.2d 1, 4 (Minn. 2004) ("The preponderance of the evidence standard requires that to establish a fact, it must be more probable that the fact exists than that the contrary exists."). To determine whether the defendant consented, we consider "the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Brooks*, 838 N.W.2d at 569 (quotation omitted). "[C]onsent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned." *Id.* Merely "acquiescing to a claim of lawful authority" is not consent, but, in regards to the implied consent law, "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 569, 570.

Dempster attempts to distinguish the circumstances of her consent from the circumstances in *Brooks*. Significantly, Dempster argues that (1) her initial refusal of the PBT "taught" or "trained" her "that her 'choice' of whether to submit to a search was not a real choice" because "refusal would result in a loss of liberty," and (2) the implied consent advisory and Officer Sisson's answers to her questions coerced her consent. These arguments are without merit.

First, regarding the PBT, Dempster implies that Officer Sisson stopped handcuffing her as a reward for agreeing to take the PBT. The record does not support this implication. Officer Sisson testified that, following Dempster's request to take the PBT, she stopped handcuffing Dempster "so that she could provide a PBT sample." According to Officer Sisson's incident report, Dempster was then "handcuffed (double locked, checked for tightness), searched, and placed in the back of [her] squad car." Dempster also testified that after she took the PBT, the handcuffing "happened again," and she "was taken to the police station in handcuffs." On this record, the fact that Officer Sisson paused the arrest to accommodate Dempster's request to take the PBT does not support a finding of coercion.

Second, regarding the implied consent advisory, Dempster does not contend that Officer Sisson misstated the law or emphasized the consequences of refusal.[1] Rather, Dempster's argument focuses on the content of the implied consent advisory:

---

[1] The record would not support such contentions, as it demonstrates that Dempster pressed Officer Sisson for information and Officer Sisson merely restated the applicable statutory provision, and then she offered to re-read the implied consent advisory. Additionally, Dempster testified that Officer Sisson did not behave aggressively.

specifically, the criminalization of test refusal. In *Brooks*, the Minnesota Supreme Court concluded that although Minnesota's implied consent law presents suspects with a difficult and unpleasant choice, the nature of this choice is not unlawful coercion. *Id.* at 571. To the contrary, the implied consent advisory makes it clear that whether to submit to testing is a choice, and "the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.* at 572.

Considering the totality of the circumstances, the state proved by a preponderance of the evidence that Dempster freely and voluntarily consented to the test. Because Dempster freely and voluntarily consented, even absent our conclusion about "general reasonableness," a warrant was not required.

For the foregoing reasons, the district court correctly denied Dempster's motion to suppress the test results. Accordingly, we affirm Dempster's conviction of driving while impaired.

**Affirmed.**