*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0328**

William Haugen, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed December 29, 2014
Affirmed
Reyes, Judge**

St. Louis County District Court
File No. 69DUCV083376

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, Anne Fuchs, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Kirk, Judge; and Reyes, Judge.

# U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

Appellant challenges the revocation of his driver's license under the implied-consent law, arguing that the district court erred by denying his motion to suppress the alcohol-concentration evidence obtained from a warrantless breath test. We affirm.

## FACTS

On August 20, 2008, Trooper Mike LeDoux pulled appellant William Michael Haugen over for speeding while he was driving in St. Louis County. During the stop, the trooper detected an odor of alcohol coming from appellant and noticed that his eyes were bloodshot and glossy. The trooper asked appellant to perform field sobriety tests. Appellant performed poorly on the tests, exhibiting signs of intoxication. Appellant submitted to a preliminary breath test (PBT) which reported a result of .124. Appellant was arrested for DWI.

While appellant was in the back of the squad car, the trooper read appellant the implied-consent advisory. The advisory informed appellant that Minnesota law required him to take a test to determine if he was under the influence of alcohol; that refusal to take a test was a crime; and that he had the right to consult with an attorney before making a decision about testing. The trooper asked appellant if he understood what had just been read to him. Appellant stated that he understood the advisory and wished to consult an attorney. The trooper transferred appellant to St. Louis County Jail.

At the jail, appellant was provided with a phonebook of attorneys' phone numbers. Appellant used his own cell phone to make calls. After five minutes, appellant advised the trooper that he had completed his phone calls. The trooper asked appellant if he would submit to a breath test and appellant replied, "Yes, I will." The breath test revealed an alcohol concentration of .11. The trooper read appellant his Miranda rights, and, at this time, appellant invoked his right to remain silent. At no point during the encounter did the trooper seek a warrant prior to obtaining appellant's breath test.

2

Appellant's driving privileges were subsequently revoked, and appellant filed a petition challenging the revocation. An implied-consent hearing was held on October 1, 2013, which was limited to the issue of admissibility of the breath test on constitutional grounds. No testimony was taken, and the parties submitted stipulated exhibits into evidence including the trooper's report and the implied-consent advisory. On December 30, the district court issued an order denying appellant's motion to suppress the admissibility of the breath test and sustaining the revocation. The court found that appellant freely and voluntarily consented to the breath test as "[n]othing in the record indicates [appellant's] will was overborne." This appeal follows.

### D E C I S I O N

A challenge to a license revocation based on an assertion of a violation of the right to be free of unreasonable searches is reviewed de novo. *Harrison v. Comm'r of Pub. Safety*, 781 N.W.2d 918, 920 (Minn. App. 2010); *see also Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004) ("When the facts are not in dispute, the validity of a search is a question of law subject to de novo review.").

The United States and Minnesota Constitutions guarantee the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. Collection and testing of a person's blood, breath, or urine constitutes a search under the Fourth Amendment of the United States Constitution, requiring a warrant or an exception to the warrant requirement. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989); *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). A search is generally unreasonable unless it

3

is conducted pursuant to a warrant issued upon probable cause.  *Skinner*, 489 U.S. at 619, 109 S. Ct. at 1414.  However, there are established exceptions to the warrant requirement, two of them being consent to search and the existence of exigent circumstances.  *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992).  Police do not need a warrant to search a person's blood, breath, or urine if the subject voluntarily consents to the search.  *Brooks*, 838 N.W.2d at 568.  The commissioner must establish by a preponderance of the evidence that the defendant freely and voluntarily consented.  *Id.*

Appellant argues that he did not freely and voluntarily consent to a breath test.  Voluntary consent is given without coercion, such that a reasonable person would feel free to decline the police officer's requests or otherwise terminate the encounter.  *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994).  Whether a driver's consent is voluntarily is determined by examining the "totality of the circumstances."  *Brooks*, 838 N.W.2d at 568.  The totality of the circumstances includes "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said."  *Id.* at 569 (quotation omitted).  The nature of the encounter includes how the police came to suspect the driver was driving under the influence, whether they read the driver the implied-consent advisory, and whether the driver had the right to speak with an attorney.  *Id.*

In *State v. Brooks*, the supreme court concluded that, based on the totality of the circumstances, nothing in the record suggested that the defendant "was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired."  *Id.* at 571 (quotation marks omitted).  Similarly here, nothing in the record suggests that appellant's will was overborne and that his capacity for self-determination

was critically impaired. Appellant was pulled over for speeding. Upon talking to appellant, the trooper noted signs of intoxication. Appellant performed poorly on the field sobriety tests, and the trooper requested that appellant submit to a PBT. The PBT revealed a result of .124. After placing appellant under arrest, the trooper read the implied-consent advisory to him. The advisory makes it clear that drivers have the right to consult with an attorney and have a choice whether to submit to testing. Appellant acknowledged that he understood its significance. Appellant was aware of his right to consult an attorney, and he exercised that right. Appellant voluntarily concluded his time to consult an attorney. When the trooper asked whether appellant would submit to a breath test, he unequivocally responded, "Yes, I will." Like *Brooks*, there is nothing in the record to indicate that appellant's consent to the breath test was anything but voluntary.

Appellant contends that this case is factually distinguishable from *Brooks* because appellant did not consult with an attorney before submitting to the breath test. In *Brooks*, the supreme court stated that the fact that the defendant "consulted with counsel before agreeing to take each test reinforces the conclusion that his consent was not illegally coerced." *Id.* Appellant asserts this distinction is significant due to the coercive language of the implied-consent advisory which instructs, "Minnesota law requires you to take a test to determine if you are under the influence of alcohol." Because he consented without the advice of an attorney, appellant argues it was not made clear to him that he had a meaningful choice with regard to consenting to, or refusing to consent to, a warrantless search. We are not persuaded.

5

First, the record in this case indicates that appellant had the right to contact an attorney and that he exercised that right. Simply because appellant consented to the test after he voluntarily concluded his time to consult with an attorney does not render his consent invalid. And appellant does not argue that his right to an attorney was not properly vindicated. Moreover, this court has held that a defendant's submission to testing was consensual even when the defendant *declined* to contact an attorney. *See, e.g., Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717 (Minn. App. 2014).

Second, the *Brooks* court held that a driver may validly consent to testing even if informed that refusal to submit to testing is a crime in Minnesota. 838 N.W.2d at 570. In response to the defendant's argument that he was coerced into agreeing to testing because he was told that test refusal was a crime, the supreme court found that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* The language of the implied-consent advisory makes clear that a person has a choice of whether to submit to testing, and "the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.* at 572.

Appellant also points out that he was under arrest when he made the testing decision, and he urges this court not to overlook the coercive nature of an in-custody environment. However, the defendant in *Brooks* was also under arrest on each occasion that he agreed to submit to testing. These facts are relevant to determining the validity of the consent, but as the *Brooks* court explained, they are not dispositive. Here, as in

6

*Brooks*, there is no indication that appellant was confronted with repeated questioning or held in custody for an extended period of time before being asked to take the breath test.

Finally, appellant argues "[e]vidence that [appellant] agreed to a warrantless search, standing alone, is insufficient as a matter of law to meet the burden of proving that his agreement was actual, constitutionally sufficient consent."  But a careful analysis of the totality of the circumstances demonstrates that appellant's consent was valid.

Appellant also argues that there is no good-faith exception to the Fourth Amendment exclusionary rule and thus any illegally obtained evidence must be suppressed.  We do not reach the merits of this argument because we find that appellant voluntarily consented to the breath test.

**Affirmed.**